UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

D-1 CALVIN ZASTROW,
D-2 CHESTER GALLAGHER,
D-3 HEATHER IDONI,
D-5 JOEL CURRY,
D-6 JUSTIN PHILLIPS,
D-7 EVA EDL, and
D-8 EVA ZASTROW,

    Defendants.
_____/

Case No. 23-cr-20100

HON. MATTHEW F. LEITMAN

## DEFENDANT JUSTIN PHILLIPS BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT ONE

Now comes the defendant, JUSTIN PHILLIPS who JOINS in GALLAGHER's Motion To Dismiss, and further states as follows:

Defendant GALLAGHER argues in his Motion that 18 USC 241 ("Section 241") is inconsistent with the statutory scheme enacted by Congress and unconstitutionally and impermissibly takes from the legislative branch, the power to impose punishments. Thus, this prosecution as an application of the "Conspiracy Against Rights" Statute intrudes on separation of powers which is "contrary to our constitutional design" (GALLAGHER BRIEF, DE 314 AT PAGE. This Brief in Support of the Motion to Dismiss Count One argues in addition that (1) there is no basis in the text or history of 18 USC 241 that supports the application of this criminal law to the Defendants; (2) Conspiracy to Violate Rights requires evidence of specific intent beyond a reasonable doubt to characterize the incident as a criminal conspiracy and this burden cannot be met

1

by the Government; (3) Defendant's actions were core constitutional activities protected by the First and Fourteenth Amendment to the United States Constitution; and, (4) ) no single plan existed between the alleged conspirators meaning there was not a shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and there can be no conspiracy as a matter of law.

## I. The plain text and history of the Statute Compels Dismissal of Count One

The Conspiracy Against Rights Statute was originally enacted to prevent Government Officials, such as prosecutors, Sherriff's and local government officials from stealing the votes of the recently freed slaves following the Civil War (See For example, "*Section 241 and the First Amendment*, *Avoiding Conflict Through a Proper Mense Rea Analysis*," (630 Duke Law Review, 1993): "Although primarily designed to protect the right to vote section 241 also has reached other rights," including:

1. The right to vote (*United States v Price*, 383 US 787; 86 S Ct 1152; 16 L Ed 2d 267 (1966) for an extensive discussion and interpretation of 18 USC 241);

2. The right to have your vote counted fairly (Gressman (1952), "*The Unhappy History of Civil Rights Legislation,* 50 Mich L. Rev 1323).

3. The right to be protected from violence when in the custody of U.S. Marshals (*Logan v United States*, 144 US 263; 12 S Ct 617; 36 L Ed 429 (1892).

4. The right to effectuate a claim under the homestead Act (*United States v Waddell*, 112 US 76; 5 S Ct 35 (1884)*.

5. The current version of the statute was also enacted to prevent government officials from intimidating and depriving African Americans of the full and free exercise of their civil rights (See History and Notes: 18 USCS 241).

2

As a result of this Congressional intent, almost all of the case law under Section 241 concerns voting, housing, and travel rights of African Americans.

The Conspiracy Against Rights Statute is a general statute that is not specifically tailored to the crime alleged in this case, namely protesting an abortion clinic.  Bringing this case violates ample case law and the intent of Congress which clearly requires that if a prosecutor has a case where an alleged offense by a defendant violates more than one criminal statute, the prosecutor is **_obligated_** to charge defendant under the more specifically tailored crime. United States v. Bufalino, 518 F. Supp. 1190, 1981).  Here the prosecutors could (and have) charged the Defendants under the FACE Act which is the statute "specifically tailored to the crime."  The almost never before seen "Conspiracy Against Rights Statute is NOT specifically tailored to the crime.  In fact, you have to take a torturous linguistic pathway to make this fit, as well as ignore the First Amendment, and the Fourteenth Amendment.

A review of the case law on Section 241 shows the plain meaning of the Statute behind criminal conspiracies which, until this administration, were well known to the Bar.  The Statute makes it a crime: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person…in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States."  The scope of this conspiracy statute is broad and attempts to ensnare ongoing conspiracies to violate Civil Rights.  We cannot find a single case where a peaceful protest led to Conspiracy Against Rights Charges because, in the past at least, Courts have been willing to balance the Constitutional Rights of protest with the rights of persons to engage in statutorily protected activities while prosecutors have been generally concerned with the fair and equal application of justice.

**II. Conspiracy to Violate Rights requires evidence of specific intent beyond a reasonable doubt to characterize the incident as a criminal conspiracy and this cannot be met by the Government**

Count 1, Conspiracy Against Rights, 18 USC 241 alleges the Defendants Conspired to "oppress and intimidate patients and employees of the NFPC (Northline Pregnancy Center) in the free exercise and enjoyment of the rights and privileges secured to them" (Global Indictment DE ¶10). On August 27, 2020 the Defendants engaged in a peaceful protest at the abortion center at Northline Pregnancy Center in Sterling Heights, Michigan along with dozens of other persons. Critically for the *mens rea* element required under Section 241, the stated goal of the Defendants must have been to oppress or intimidate. They have consistently shown, without rebuttal, that their intent was to save the life of innocent babies, not to oppress and intimidate any person.

In addition to adopting Gallagher's separation of powers argument (Codefendant Brief at page 1) Defendant PHILLIPS moves to DISMISS the Conspiracy Against Rights charge because this provision criminalizes conspiracies that aim to "injure, oppress, threaten, or intimidate any person…in the free exercise or enjoyment of any right secured by the Constitution or laws of the United States. There is no direct evidence that can possibly lead a jury to infer that these Defendants acted with the specific intent to injure, oppress, threaten, or intimidate any person. There is no evidence that the Defendants, at any time, acted deliberately to injure, oppress, threaten or intimidate any person.

Section 241 describes a particular type of criminal conduct, namely Conspiring to injure, oppress, threaten, or intimidate any person. The Supreme Court has held that "to be guilty under section 241, the defendant must act with the specific purpose to deprive someone of a federally guaranteed right, not merely with the purpose to commit the act that causes the deprivation" *United States v Guest*, 383 US 745; 86 S Ct 1170; 16 L Ed 2d 239 (1966). Thus, for example, a conspiracy to rob an interstate traveler does not, of itself, violate section 241. But if the purpose of the

4

conspiracy is to impede or prevent the right of interstate travel, or to oppress a person in his exercise of that right" only then may a criminal prosecution stand (Guest, Id).

In the case at bar, Defendants did not act with the specific purpose to deprive any person of a federally guaranteed right but rather acted with the intent to convince women to change their minds about getting an abortion. This is a lawful purpose and even if they engaged in unlawful act (such as trespassing) this does not provide evidence of a conspiracy to violate rights. At no time was there an agreement to violate the rights of any person. If the government can show that one or more of the defendants acted in such a way so that in fact a person's rights were infringed, in no way does this show that the Defendants *conspired* or *planned* to violate the protected rights of any person.

The indictment DE 1 makes conclusory allegations that the Defendants "did willfully combine, conspire, and agree with one another…to oppress and intimidate patients and employees of the [Abortion Clinic]" DE 1 ¶10). However, the prosecution fails to identify the specific acts the Defendants conspired to commit which constituted "oppression" or "intimidation." The Government may not rely on conclusory allegations ("It is well settled that conspiracy claims must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim" *Jackson v City of Cleveland*, 925 F3d 793, 2019))

The Government must prove the Defendants conspired with the intent to deprive others of their rights. IF the Government can prove a conspiracy at all, they will only be able to show that these Defendants 'conspired' to act to protect human life and to save the lives of babies. All parties to this case know beyond doubt the Defendants acted with the intent to save human life. These Defendants were not at that clinic risking death or injury by vengeful pro death actors because they wanted to intimidate, harass, injure, or oppress some random pregnant woman. All the parties

5

know they did not intend to act in a way to injure, oppress, threaten or intimidate any person and that they did not in fact act in such a way. In fact, no person was injured. No person was oppressed. No person was threatened. No person was intimidated. If a vulnerable person felt intimidated by the Defendants exercising their Constitutional Rights this is unfortunate but despite what many seem to believe today, how you feel does not nullify the Constitutional rights of others. There is nothing in the Indictment that suggests the Defendants *intended* to injure, oppress, threaten or intimidate any person. In short, the Government's conclusory allegations about the nature of the agreement are insufficient. Therefore, Count 1: 18 USC 241, Conspiracy to Violate Rights, should be DISMISSED.

In <u>NAACP v. Claiborne Hardware Co.</u>, 458 U.S. 886, 933-34, 73 L. Ed. 2d 1215, 102 S. Ct. 3409 (1982) the court held:

> *A massive and prolonged effort to change the social, political, and economic structure of a local environment cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts. Such a characterization…must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means, that carefully identify the impact of such unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity."*

There is no doubt the prolife movement is a massive and prolonged effort to change the social, political and economic structure" and thus "cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts" (Id).

In fact, in this case there were no "violent acts." The actions of the Defendants cannot be characterized as a violent conspiracy….such a characterization in an indictment must be supported by findings that disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means. Even if video shows that unlawful means were used in the protest, there is nothing on the record suggesting that Defendants all <u>agreed</u> to oppress and intimidate any person much less to use unlawful means to oppress and intimate persons. This is because there was no agreement to

use unlawful means to protest the killing of babies. Further, there is nothing in the Indictment or the prosecutorial conduct of the Biden Justice Department that "recognizes the important of avoiding the imposition of punishment for constitutionally protected activity" (NAACP, Id). In fact, quite the opposite appears to be the case with the Biden government demonstrating repeatedly it is determined and committed to selectively silencing and punishing their political enemies by any means necessary.

### III. Defendant's actions were core constitutional activities protected by the First and Fourteenth Amendment to the United States Constitution and <u>Fischer</u> requires DISMISSAL

In contrast, to the Defendants in this case who had a host of core Constitutionally protected beliefs and behaviors, the 'victims' in this case did not have any Constitutional rights whatsoever. The court has ruled the victims had a statutory right but there is no Constitutional right to obtain an abortion. The Supreme Court agrees there is no fundamental constitutional right to an abortion (*Dobbs v Jackson Women's Health Org*, 597 US 215; 142 S Ct 2228; 213 L Ed 2d 545 (2022). In contrast there *is* a Constitutional right to protest and to exercise religious beliefs. Thus, we are literally dealing with one group that has no Constitutional protections (abortion candidates) and another group whose activities are protected by the First Amendment and Fourteenth Amendment to the U.S. Constitution. As a starting point, if there is no federal right to abortion, there can be no criminal conspiracy to deprive individuals of such right. This alone should compel this Court to DISMISS Count I and Defendants renew their previous arguments in this regard.

In the very recently decided Supreme Court case of *Fischer v United States*, \_\_\_US\_\_\_; 144 S Ct 2176; 219 L Ed 2d 911 (2024), Defendants were charged under an accounting law for delaying an official proceeding due to a protest at the Capital building on January 6, 2021. The court held that the statute in question "covers certain obstruction of state or local law enforcement with the intent to facilitate illegal gambling... address obstructive acts in specific contexts, including federal

7

audits, examinations of financial institutions, and inquiries into healthcare-related offenses" (*Fischer*, Id). The statute did not contemplate protests at the Capital Building, but contemplated accounting errors. The statute contained a 'catch all' "otherwise" clause at the end of the section which the government took as license to broadly apply and prosecute defendants who Congress never intended to be prosecuted. The Supreme Court reasoned: "If the Government were correct, then the "otherwise obstructs, influences, or impedes any official proceeding" provision—which is buried in subsection (c)(2) of Section 1512—would largely obviate the need for that broad array of other obstruction statutes."

Similarly, in the case at Bar, but without even a 'catch all' provision, the government has overreached and attempted to apply a criminal statute improperly- but only against their political enemies. The Conspiracy to Violate Rights statute contains language making it a crime to intimidate or oppress a person in the exercise of their constitutional rights. Using the broad, ambiguous language about violation of rights to the specific situation of abortion protests is completely improper when there is a narrower statute tailored by Congress to fit the crime. In this case, the narrower statute specifically tailored to the conduct complained about is the Freedom of Access to Clinic Entrances Act. Adding an 11-year charge to what Congress has already determined to be a maximum1-year charge from a statute that has no application to the facts in the case and with and no evidence that Congress intended to permit such prosecutions is incredible, bad faith, and egregious prosecutorial misconduct.

In order "to determine the scope of a criminal statute, the Court must consider how the meaning is linked to the "surrounding words" and 'give effect, if possible, to every clause and word of [the] statute.' *Williams v Taylor* 529 U. S. 362, 404 (quoting *United States vs. Menasche* 348 U. S. 528, 538-539). The Court considers both "the specific context" AND the "broader context of the statute as a whole." *Robinson v Shell Oil Co.*, 519 U. S. 337, 341.

8

In *Fischer* as in this case, enemies of the Biden regime (and only enemies of the Biden regime) were prosecuted while friends who commit far more egregious conduct are not charged by the Biden regime. The *Fisher* Defendants were charged under the Sarbanes-Oxley Act of 2002 for "disrupting an official proceeding." As in this case, the Government had reached deep into its seemingly bottomless bag of tyrannical tricks to pull out a statute designed for Accountants and apply it to protesters on January 6, 2001. Similarly in this case, the Government has reached deep into its seemingly bottomless bag of tyranny to pull out a statute designed for Ku Klux Klan terrorists violently oppressing African and Jewish Americans and apply it to peaceful Christian protesters praying for the lives of unborn children.

*Fischer* requires us to analyze the Conspiracy statute with reference to the specific context and the broader context of the statute as a whole. The specific context was to protect freed slaves from the effects of local Southern Democrat government officials who were stealing the votes of African Americans. The broader context of the statute as a whole has never been brought because no prior Presidential administration has targeted their political enemies with the most tortured criminal statute definitions they can imagine. No prior administration has openly targeted their political opponents with criminal prosecutions by twisting and distorting the clear meaning of statutory authority.

The question then becomes what is the scope of and what constitutes the statutory authority for a criminal "Conspiracy." Unfortunately, because no prior federal prosecutors have overreached in this way, Section 241 does not provide a ready example, but references related sections of the law, specifically the Civil Conspiracy statute. A civil conspiracy claim uses the same legal elements as 18 USC 241 and can be brought pursuant to 18 USCS 245 under authority of 42 U.S.C.S. § 1983 to gain civil compensation for a Conspiracy to Violate Rights. Section 245 (Civil Conspiracy Against Rights) contains some examples of Conspiracies that might provide a basis of Civil Action

9

that may help us answer this question of what was the Congressional intent with respect to the scope of unlawful Conspiracies.

Subsection 1 of Section 245 (the Civil Conspiracy Against Rights) talks about intimidating persons for unlawful purposes without regard to protected characteristics. The unlawful purposes which can make up a valid Conspiracy includes intimidating persons from:

*A. Voting or qualifying to vote*

*B. participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States;*

*C. Applying for or enjoying employment, or any perquisite thereof, by any agency of the United States;*

*D. serving, or attending upon any court in connection with possible service, as a grand or petit juror in any court of the United States;*

*E. participating in or enjoying the benefits of any program or activity receiving Federal financial assistance.*

Further, if a person acts because of another person's race, color, religion, or national origin because that person has been**:**

*(A) enrolling in or attending any public school or public college;*

*(B) participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof;*

*(C) applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency;*

*(D) serving, or attending upon any court of any State in connection with possible service, as a grand or petit juror;*

*(E) traveling in or using any facility of interstate commerce, or using any vehicle, terminal, or facility of any common carrier by motor, rail, water, or air;*

*(F) enjoying the goods, services, facilities, privileges, advantages, or accommodations of any inn, hotel, motel, or other establishment which provides lodging to transient guests, or of any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility which serves the public*

The Court can see that none of these conspiracy objects intended to be prohibited by Congress are within a country mile of the conspiracy the Government is trying to prove in this case. The holding in *Fischer* is clear and it is directly applicable to this case before the court: "The Government's theory would also criminalize a broad swath of prosaic conduct, exposing activists and lobbyist to decades in prison**. Our usual approach in obstruction cases has been to "resist reading" particular sub-provisions "to create a coverall statute**. *Yates*, 574 U. S., at 549 (plurality opinion, emphasis added). Nothing in the text or statutory history gives the Court a reason to depart from that practice today. And the Government's interpretation would give prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish with far shorter sentences" (Id).

Congress saw fit to impose up to a 1-year sentence for violations of the FACE Act which specifically describes the conduct prohibited. Congress did not see fit to impose more than a decade in federal prison on peaceful prolife activists. Congress did not mention "Conspiracy" in the FACE Act. Congress did not mention abortion in the Conspiracy Statute. The conspiracy statute does not authorize criminal prosecutions of abortion protesters but instead lists a number of examples of potential violations and objects of unlawful conspiracies that may be prosecuted. Abortion protesters are nowhere on the list and in fact, it is not even close. Congress NEVER intended for peaceful prolife protesters to be prosecuted under a theory of Conspiracy Against Rights.

In fact, substantial case law warns of the problem of impacting core constitutional rights such as the right to protest. The first case listed in the statutory notes to section 245 says:

> The Central purpose of 18 USCS § 245(b) is to prevent and punish violent interferences with exercise of specified civil rights and it is not aimed at interrupting or frustrating otherwise orderly processes of state law. *Johnson v. Mississippi, 421 U.S. 213, 95 S. Ct. 1591, 44 L. Ed. 2d 121, 1975*.

11

The second case clearly articulates the principle that the primary enforcement of civil rights is the States, and not the federal government *United States v. Mattson,* 600 F.2d 1295, (9th Cir. 1979).

The third assures the reader that 18 USCS § 245 is not unconstitutional on its face, since it is directed at conduct <u>not</u> protected by First Amendment. *United States v. McDermott,* 29 F.3d 404, 1994 (8th Cir. 1994).

In other words, the courts have read into this, and all statutes the concept of Constitutional Supremacy. That is, if a statue infringes on fundamental or core Constitutional rights then the enforceability that causes the violation, if not the statute itself, must be overturned. Here, the Government's interpretation of the Conspiracy Against Rights Statute is overbroad, unsupported by the statutory language, contradicts the reasoning in *Fischer*, infringes on core and fundamental rights, and last but certainly not least, violates Equal Protection by targeting enemies of the regime while looking the other way when allies commit even worse crimes. Therefore, pursuant to the reasoning in *Fischer*, Count I should be DISMISSED.

**IV. No single plan existed between the alleged conspirators meaning there was not a shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and there can be no conspiracy as a matter of law.**

The elements to make up a civil or criminal case are that where there is an agreement between two or more persons to injure another by unlawful action, the person bringing the charges must demonstrate that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury (42 USCS 1985). In this case it is clear that there was not a single plan that existed. Some protesters stayed in the parking lot. Some prayed on the sidewalk. Some tried to witness to women as they entered the clinic. Some took other actions. There was no

unified or single plan to protest that existed and thus there could be no conspiracy. A group of people met and agreed to protest. There is not a single bit of evidence that the people met with the intention of intimidating, oppressing or harassing any person. There is no evidence that Defendants intended to intimidate, oppress or harass any person because they did not intend to intimidate, oppress, or harass any person. The "conspirators" clearly did not share a single conspirational (i.e. unlawful) objective to deprive the [victims] of their civil rights. In fact, the prosecution cannot show that even a single Defendant had this unlawful objective to violate rights in their minds because it is clear the objective they all shared was that of saving unborn babies.

We also raise the issue of balancing of rights as articulated by the Supreme Court in a number of recent cases. Although SCOTUS has not ruled on the issue of balancing Constitutional rights to protest and exercise religion with statutory rights granted by Congress to kill the unborn, they have signaled loud and clear where they stand on the issue. In *Cloer v Gynecology Clinic, Inc, 528 US 1099, 1101; 120 S Ct 862; 145 L Ed 2d 708, 709-10 (2000)* the Supreme Court narrowly declined to grant Certiorari on whether a State conspiracy statute could be used to thwart core First Amendment activities but Justice Scalia (with Justice Thomas concurring) dissented, providing insight into how the court will rule on this issue once they are forced to take it up. Heavily criticizing a State prosecution of abortion protesters under a theory of "conspiracy to violate rights" Justice Scalia wrote:

> *This extraordinary application of state civil-conspiracy law to attempts to persuade persons not to patronize certain businesses would outlaw many activities long thought to be protected by the First Amendment -- routine picketing by striking unions, for example, the civil-rights boycotts directed against businesses with segregated lunch counters in the 1960's. It may well be that an attempt, by lawful persuasion, to harm someone's business out of sheer malice, or in order to capture his clientele, can be made illegal.* ***But seeking to harm it (through persuasion) because of principled objection to the nature of the business -- whether because of moral disapproval of abortion, or social disapproval of segregation, or economic disapproval of substandard wages -- is an entirely different matter. If this sort of persuasive activity can be swept away under state civil-conspiracy laws, some of our most significant*** *First Amendment jurisprudence becomes academic.*

13

> *Consider, for example, how the South Carolina Supreme Court's theory makes a nullity of our statement in a leading case involving the boycott of segregated businesses in Mississippi* <u>Cloer</u>*, Id, (Emphasis added).*

The Supreme Court has strongly indicated it would not rule favorably on the use of Section 241 to selectively target disfavored beliefs. A prosecution that violates constitutional support for peaceful, civil disobedience, because they maintained a "principled objection to the nature of a business" cannot be a basis for *civil* Conspiracy charges (<u>*Cloer*</u>, Id). Therefore, the idea a principled objection based on religious beliefs that have existed for thousands of years could become the basis of a *criminal* conspiracy is completely unfounded. The Supreme Court has given us clear direction in <u>*Fischer*</u> on the overbroad use of federal statutory language to ensnare defendants that Congress did not intend to be ensnared. It is the Government prosecution, not Defendants, that seeks to strip away civil liberties in this case, sweeping away centuries of jurisprudence protecting core political protest that is wholly peaceful.

    Prosecutors are obligated to use the more specific statute when bringing prosecutions and not twist the criminal statutes to achieve their ends. They are not permitted to reach far into their grab bag hoping to make a statute clearly not intended for their nefarious uses fit their prosecutorial goals of helping the regime they serve. Similarly the government is supposed to use appropriate measures to determine criminal conspiracy that is derived from the statutory language and not invented in response to political considerations.

    For all these reasons, Count I, Conspiracy Against Rights should be DISMISSED.

                                    Respectfully Submitted

                                    PACIFIC JUSTICE INSTITUTE

                                    By:   <u>s/ Dave Peters</u>
                                                David C. Peters II (P48648)